FILED
JUL 3 0 2020
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SIDNEY B. HARR, ) <br> ) <br> Plaintiff Pro Se, ) <br> ) <br> v. ) <br> ) <br> WRAL-5 NEWS, and ) <br> JAMES F. GOODMON, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No.: 5:20-cv-00362-M |

## PLAINTIFF PRO SE'S MOTION SEEKING LEAVE OF COURT
## TO MANUALLY FILE EXHIBIT C – A COMPUTER DISK

NOW COMES PLAINTIFF PRO SE SIDNEY B. HARR, M.D. (hereinafter "HARR") to move THIS COURT in seeking leave to manually file "Exhibit C – Disk for laptop viewing about the April 14, 2010 incident at Duke University Law School – including the audio-recording of the conversation" (hereinafter "EXHIBIT C"). This motion is filed by HARR pursuant to Section V.A.2(b) of the CM/ECF Policy and Procedures Manual in which the exhibit is determined not to be incompliance because it is not capable of being electronically filed; relief being sought on the same Section of the Manual.

HARR's preference of manually filing legal documents with the courts has left him unfamiliar with the electronic process. He subsequently will attempt to file EXHIBIT C electronically, but concomitantly will file this motion in the event his attempt falls short of being in compliance. The importance of EXHIBIT C and basis seeking THIS COURT's leave to manually file is expressed as follows.

- 1 -

EXHIBIT C is a computer disk that is operational on most laptop/computer with disk-holders, and it contains two files regarding an incident at Duke University School of Law (hereinafter "DUKE LAW") that occurred on April 14, 2010. The first file A contains an audio-recording of the principals of the incident: HARR, the security guard Mr. K. Harris (hereinafter "SECURITY"), and Duke Law Professor James Coleman (hereinafter "COLEMAN"). The second file B consists of an interactive mini-documentary of the incident containing germane documents.

EXHIBIT C provides a complete understanding of the April 14, 2010 incident upon which HARR's discrimination/violation of First Amendment Rights lawsuit against Duke University (hereinafter "DUKE"), its president Richard Brodhead (hereinafter "BRODHEAD"), and its law school dean David F. Levi (hereinafter "LEVI") (the three collectively "DUKE DEFENDANTS") was filed less than a year later on April 5, 2011.

EXHIBIT C is at the crux of the current case filed against Defendants WRAL-5 News and James F. Goodmon (hereinafter collectively "DEFENDANTS").

## I. APRIL 14, 2010 INCIDENT AT DUKE LAW

In April 2010, HARR was known in the offices of the university president and law school dean as a supporter of former Durham D.A. Mike Nifong (hereinafter "NIFONG"). It was NIFONG who initiated the prosecution of three DUKE lacross players in the alleged 2006 sexual assault of African American Crystal Mangum (hereinafter "MANGUM") during a beer-guzzling/stripper-ogling spring break bash held in Durham; the criminal charges against the three dropped a year later by then-NC Attorney General Roy Cooper.

On April 12, 2010, HARR sent letters to BRODHEAD and LEVI, telling them how much he enjoyed the three-day seminar open to the public held at DUKE LAW from April 8-10, 2010.

To show appreciation and support for the offerings open to the public, HARR also mentioned his intention to attend the event planned for April 14, 2020 at DUKE LAW that was open to the public – an interview with U.S. Justice Stephen Breyer.

Forewarned of HARR's planned attendance at the event, DUKE DEFENDANTS, individually or in combination, plotted to feloniously commit the crime of kidnapping of HARR. The diabolical ambush is evidenced by repeated statements by SECURITY and the fact the DUKE campus police (with the authority to arrest individuals on DUKE property) was summoned by SECURITY without legitimate justification.

Had not COLEMAN happened upon the scene and vigorously interceded on behalf of HARR, surely the NIFONG-supporter would have been arrested and his audio-recording of his dialogue with SECURITY erased. Not in question is that DUKE DEFENDANTS had the intention of kidnapping HARR through the appearance of a lawful arrest. What is unknown is what was to become of HARR following his apprehension. HARR's fate could have run the gamut from wrongful imprisonment to murder. Being an African American, HARR's black life was of no consequence to societies in Durham and North Carolina, and DUKE had the media (including WRAL-5 News) in its corner.

What makes this particularly alarming is that HARR was not marked for unlawfully abduction by government storm-troopers, but by the huge private business conglomerate known as DUKE... and this occurred a decade before civil strife, provoked by an overreach of Trump administration's use of federal forces in municipalities to dominate protesters, made such a scenario of snatching private civilians off the streets without due process seem doable.

Though likely unintentional, SECURITY and DUKE police prevented the commission of multiple serious felonies by DUKE when they changed course by not arresting HARR.

In order to control the narrative of the incident, DUKE DEFENDANTS likely enlisted the assistance of Tom Breen (hereinafter "BREEN") of the Associated Press. It was BREEN who first approached HARR on his emergence from the lecture hall under the pretext of wanting his opinion regarding the interview. After an exchange of business cards and BREEN moved on, HARR was intercepted by SECURITY on his way to the building's exit.

A press release by the Associated Press, regardless of its falsity, could have seriously damaged HARR and his grassroots organization *Committee on Justice for Mike Nifong*, as well as provided justification for cruel and unconstitutional actions it planned to employ against him. Because HARR escaped DUKE LAW and Durham without arrest, the media was left with nothing about which to write; at least nothing to its liking.

## II. MEDIA RESPONSE TO THE APRIL 14, 2010 INCIDENT

The media, including DEFENDANTS, was notified within days by HARR of his near-arrest at DUKE LAW with links given to an audio-recording of what happened. But none of the media would report on the incident or even communicate with HARR about it.

Because his good-faith efforts to satisfactorily resolve the incident in a way that would enable him and other NIFONG supporters to feel safe attending public events held at DUKE venues, HARR made a concerted effort to keep off DUKE property. The only two times HARR would subsequently set foot on DUKE property would be to pick up a report on MANGUM's emergency department visit in 2006 as part of a betrayal by *The Daily Beast*, and to visit a friend hospitalized at a Raleigh DUKE hospital.

A little less than a year later HARR notified media, including DEFENDANTS of his lawsuit against DUKE DEFENDANTS that was filed on April 5, 2011. There was absolutely no media coverage of HARR's filing of his lawsuit. For all intents and purposes, the general public

would be totally unaware of the April 2010 incident during which he was nearly arrested and the subsequent lawsuits it spawned.

Despite repeated filings by HARR of his lawsuit against DUKE DEFENDANTS and the adverse rulings that inevitably followed, the media, including DEFENDANTS, never reported on any of the activities.

In late June 2016, HARR was directed by the NC Middle District Federal Court to show cause why he should not be sanctioned for violating the judge's earlier rulings favoring DUKE DEFENDANTS. U.S. District Judge Catherine Eagles (hereinafter "EAGLES") was handed a fourteen-page document by HARR which stated his defense in detail. The document was not taken into consideration as she ruled against him, invoked a pre-filing injunction, and sanctioned him one thousand dollars.

Several days later, on June 30, 2016, EAGLES filed her Order in the Federal Court of North Carolina's Middle District which effectively brought the series of lawsuits against DUKE DEFENDANTS to an end as HARR decided further appellate action would be a waste of time and not worth the effort.

Up until the end of June 2016, there had not been any media article published or broadcast on the April 14, 2010 incident or the lawsuits that followed... more than six years without any media coverage on the subject matter involving HARR and DUKE LAW.

On the evening news of July 4, 2016, WRAL-5 News anchor Kathryn Brown airs a short story about the Federal Court's admonishment of HARR without mention of the April 2010 incident, and it publishes an online article titled "Court chastises supporter of Duke Lacrosse accuser." Contents of EXHIBIT C clearly demonstrate that the series of lawsuits referenced in the DEFENDANTS' July 4, 2016 article had absolutely nothing to do with the 2006 Duke

Lacrosse criminal case and had everything to do with the April 14, 2010 incident at DUKE LAW.

DEFENDANTS did not mention the 2010 incident in its article for the same reason other media did not cover the story at all... they did not want to make public DUKE DEFENDANTS' sinister plot to criminally kidnap HARR for being a NIFONG supporter and black. DEFENDANTS got around this obstacle by lying in its story and claiming HARR's lawsuits against DUKE DEFENDANTS were about the 2006 Duke Lacrosse case. Absolutely false.

DEFENDANTS wanted to discredit HARR and took the gamble that they could get away with the public publication of malicious lies in a defamatory story. To date, with past judicial rulings by courts based on a desired outcome over the merits of the case, DEFENDANTS are relying on THIS COURT to prevail and elude facing consequences for their politically and racially biased journalistic misdeeds regarding HARR.

EXHIBIT C puts a lie to EAGLES' assertions that HARR's legal actions against DUKE DEFENDANTS were vexatious and frivolous.

EXHIBIT C exposes DUKE DEFENDANTS' dastardly premeditated scheme against HARR is, itself, criminal.

EXHIBIT C, in detail, describes the 2010 incident as being solely responsible for HARR's legal actions against DUKE DEFENDANTS and documents that HARR's lawsuit against DUKE DEFENDANTS had nothing to do with the 2006 Duke Lacrosse case.

### III. RELIEF SOUGHT

Considering the vital importance of EXHIBIT C, especially with regard to proving as false DEFENDANTS' printed statements in their online article of July 4, 2010 in referencing the

- 6 -

Case 5:20-cv-00362-M  Document 5  Filed 07/30/20  Page 6 of 8

2002 Duke Lacrosse case, HARR respectfully requests relief consisting of THIS COURT's leave to manually file EXHIBIT C.

Respectfully submitted this thirtieth day of July, in the year 2020.

*/s/ Sidney B. Harr, MD*

Sidney B. Harr, Plaintiff Pro Se

116 Saint Mary's Street, # 703
Raleigh, NC 27605
Phone: (919) 601-1817
E-mail: justice4nifong@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2020, I manually filed in the case <u>HARR v. WRAL-5 NEWS, et al.</u>, case # 5:20-cv-00362, the foregoing Motion Seeking Leave of Court to Manually File Exhibit C – a Computer Disk with the U.S. District Court for the Eastern District in the State of North Carolina, located at 310 New Bern Avenue, #1, Raleigh, NC 27601.

In addition, I certify that I simultaneously served a copy of this memorandum via certified mail, postage prepaid upon Defendants' legal counsel:

Attorney C. Amanda Martin
Stevens Martin Vaughn & Tadych PLLC
1101 Haynes Street, Suite 100
Raleigh, NC 27604-1455

This the 30th day of July, 2020.

Sidney B. Harr, Plaintiff Pro Se

116 Saint Mary's Street
# 703
Raleigh, NC 27605
919.601.1817
justice4nifong@gmail.com